UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN DEJESUS,

       Petitioner,

v.

Case No. 5:04-CV-56
Hon. Gordon J. Quist

KURT JONES,

       Respondent.
       _____/

## ORDER

Petitioner has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. This matter is now before the court on petitioner's motion for discovery (docket no. 40).

**I.**    **Legal Standard for discovery**

Rule 6(a), Rules Governing Section 2254 Cases in the United States District Courts, provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." While federal habeas petitioners "have no right to automatic discovery," *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), a district court has the discretion to grant a party discovery "upon a fact specific showing of good cause under Rule 6." *Id.*, *citing Bracy v. Gramley*, 520 U.S. 899 (1997). The moving party has the burden of demonstrating the materiality of the information requested. *Stanford*, 266 F.3d at 460.

Before addressing the question of whether a moving party is entitled to discovery under Rule 6(a) to support a habeas claim, the court should first determine the "essential elements" of the relevant habeas claim. *See Bracy*, 520 U.S. at 903-04. Having determined the "essential

elements" of the relevant claim, the court can then determine whether the moving party has shown "good cause" for discovery under Rule 6(a). "Good cause" is shown by the following test: "whether specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.* at 908-09, *quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969).

### II.     Petitioner's claim

Petitioner has raised six issues in his habeas petition:

I.  Whether the admission of irrelevant and highly prejudicial testimony alleging petitioner was a member of a gang deprived him of his due process right to a fair trial under the Federal Constitution?

II. Whether the state trial court erred by allowing inadmissible hearsay evidence in at trial, depriving petitioner of his due process right to a fair trial?

III. Whether the state trial court deprived petitioner of his due process rights to a fair trial by permitting the prosecution to present highly inflammatory images to the jury from opening statement and throughout the trial?

IV. Whether the state prosecutor's repeated misconduct was so egregious that it wholly undermined the trial, rendered the verdict unreliable, and deprived petitioner of due process and an impartial trial by jury as guaranteed by the Fifth and Fourteenth Amendments to the Federal Constitution?

V.  Whether petitioner is entitled to a writ of habeas corpus as he was denied his Sixth Amendment right to the effective assistance of counsel at trial?

VI. The Michigan state courts denied petitioner due process by (a) refusing to provide available DNA biological samples for independent testing and (b) in failing to conduct a hearing

with respect to a post-appeal expert forensic scientist's report disputing the state's evidence on the critical element of the murder charge, after refusing to appoint an expert at trial.

### III.     "Essential elements" of his petitioner's habeas claim VI

#### A.     DNA testing

In support of his habeas claim VI, petitioner states that this habeas proceeding is "his last meaningful opportunity to appeal to any judicial authority" and that this court should provide him "with a forum to present the legal bases of his claims, but also to develop factual bases to support his claim of innocence," and "[a]t the very least, the Due Process Clause of the Fourteenth Amendment guarantees a meaningful opportunity to be heard in a meaningful way." Brief in support of Petition at 71. Petitioner further stated:

> Based on the trial record a request to obtain the biological samples for DNA testing was made by Petitioner pursuant to a post-conviction Michigan statute (M.C.L. 770.16) providing for such a request. In making his state court argument, Petitioner asserted and requested a hearing to establish actual innocence, citing federal case law for the proposition that the Eight and Fourteenth Amendments protects [sic] against incarcerating innocence [sic] defendants. The state courts failed to address the federal aspects of the actual innocence claim and held that Petitioner failed to meet the standards of the state statute in denying the request.

*Id.* at 74.[1]

---

[1] As an initial matter, petitioner's habeas claim VI, having been raised for the first time in a motion for relief from judgment under MCR 6.500 *et. seq.*, may be procedurally defaulted. Petitioner's motion was denied "for failing to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *See People v. DeJesus*, No. 124581 (Mich. Jan. 27, 2004). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* But see, *Abela v. Martin*, 380 F.3d 915, 922-24 (6th Cir. 2004) (holding that an order from the Michigan Supreme Court which denies an application for leave to appeal stating that the petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)" is not a clear and express

First, petitioner's claim of actual innocence, in and of itself, does not provide a constitutional basis for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 393, 400 (1993). "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400. Accordingly, the court concludes that petitioner's "actual innocence" claim does not provide a basis for federal habeas relief.

Second, state evidentiary rulings are not subject to habeas review. Federal habeas corpus review is limited to questions regarding whether the conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). An issue concerning the admissibility of evidence under state law does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that petitioner was denied a fundamentally fair trial. *Clemmons v. Sowders,* 34 F.3d 352, 357-58 (6th Cir. 1994) To determine whether the petitioner was denied a fundamental due process right, the court should consider the extent to which the evidence is critical to the case. *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994). Thus, petitioner must establish "actual prejudice" to warrant habeas relief. *Clemmons*, 34 F.3d at 357-58.

Petitioner seeks discovery to support his habeas claim VI. By way of background, the trial court addressed both of these issues on the motion for relief from judgment. The DNA test was requested pursuant to a Michigan statute, MCL 770.16, which allows a convicted defendant to seek such testing by filing a petition with the trial court. *See* MCL 770.16(1). A Michigan Circuit Court may order DNA testing pursuant to MCL 770.16(3), if the defendant:

---

invocation of a state procedural bar). For purposes of this motion, the court will not engage in a detailed analysis of the procedural default issue, but will simply address the discovery request on the merits.

>   (a)  Presents prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime that resulted in conviction.
>
>   (b)  Establishes all of the following by clear and convincing evidence:
>
>>   (i)   A sample of identified biological material described in subsection (1) is available for DNA testing.
>>
>>   (ii)  The identified biological material described in subsection (1) was not previously subjected to DNA testing or, if previously tested, will be subject to DNA testing technology that was not available when the defendant was convicted.
>>
>>   (iii) The identity of the defendant as the perpetrator of the crime was at issue during his or her trial.

The state trial court reviewed petitioner's request as one to test blood under the victim's fingernail to establish that the victim (Margaret Midkiff) may have struggled with the perpetrator that caused her death. *See* Opinion and Order (Oakland Cir. Ct. Jan. 14, 2002) (docket no. 32). The trial court determined that such testing would not exonerate petitioner: "Whether the blood source could be identified as Brandon Gohagen [the rapist] to substantiate a scratch by [the victim], such results would not undermine the State's theory of criminal liability or exonerate [petitioner]." *Id.* at 8.[2] The court also stated:

>   The Court recognizes that the jury was aware that Gohagen's truthfulness was in question as related to the scratch and to possible force used during the rape. Yet, the jury convicted [petitioner] of first-degree murder based upon Gohagen's testimony, the testimony of others, and the evidence presented. A trial judge is not allowed to act as a thirteenth juror and grant a new trial on the basis of a disagreement with the jurors' assessment of credibility. . . Further,

---

[2] The state court January 14, 2002 opinion and order is unnumbered. This court has assigned page numbers to the state court document to facilitate resolution of the present motion.

5

> the Court is aware that testimony implicated co-defendant George DeJesus [petitioner's brother], as also having facial scratches after the murder of Margaret Midkiff. In its analysis under MCL 770.16(3)(a), the Court finds that [petitioner] has not met his burden of proving that the blood under the fingernail clippings is material to identify Brandon Gohagen as the murderer of Margaret Midkiff.

*Id.* at 9. Finally, the court noted that four years had elapsed since trial, that it was not convinced that the fingernail clippings were still available for DNA testing, and that petitioner failed to provide "any clear explanation to substantiate the claim that technology is now available to subject this slight amount of blood, found under the fingernail clippings, to DNA testing." *Id.* The trial court found that while petitioner met his burden of proof as to MCL 770.16(3)(b)(ii) and (iii), he failed to meet his burden under MCL 770.16(3)(b)(i). *Id.*

Based on this record, petitioner has failed to establish actual prejudice to warrant habeas relief. *Clemmons*, 34 F.3d at 357-58. Even if DNA testing identified the blood and skin remnants as belonging to Gohagen, this would, at most, affect the credibility of Gohagen's statement that the victim did not resist his sexual assault. The existence of the DNA would not identify Gohagen as the individual responsible for kicking the victim to death or demonstrate that he is entitled to habeas relief. *See Harris*, 394 U.S. at 300. Accordingly, petitioner is not entitled to discovery with respect to the DNA testing.

**B.     Court's failure to grant independent forensic examination**

On the motion for relief from judgment, the state trial court also rejected petitioner's second claim that he was deprived of due process and his right to a fair trial when the trial court failed to grant him a request for an independent forensic examination of the victim. Opinion and Order (Jan. 14, 2002) at 5. The court noted that co-defendant Gohagen filed a pre-trial motion for

6

an independent forensic examination of the decedent, while petitioner did not file a motion but objected in the midst of trial. *Id.* The court also observed that petitioner provided no explanation as to why he did not raise the issue during his appeal as of right and why he waited three years after his conviction. *Id.* The court also noted that the affidavit, executed by Dr. Spitz on November 29, 2000, indicates that he reviewed "relevant evidence" in this case to form the opinion "that a single stomp to the head was the cause of death of [the victim]." *Id.* at 6. "[Petitioner's] premise for having an independent forensic examination is to contradict [the rapist's] testimony that [petitioner] caused [the victim's death by repeated kicking." *Id.* In rejecting this claim, the court observed that: newly discovered evidence relating only to a witness' credibility was not sufficient to require a new trial under Michigan law; that Dr. Spitz's affidavit did not identify the "relevant evidence" he used to formulate his opinion of the three-year old murder; and recalled its own observation that "evidence presented during the trial indicates that [the victim's] injuries extended beyond a single stomp to the head," including multiple subdural hemorrhages within the brain, skull fractures and bruising to the upper body. *Id.* at 6-7. The trial court denied petitioner's motion under MCR 6.508(D)(3)(b)(i) and (iii), on the ground that there was no actual prejudice because the court's denial of the co-defendant's motion for an independent forensic examination "did not result in [petitioner's] likely acquittal or create an irregularity, which was so offensive to the maintenance of a sound judicial process." *Id.* at 7.

Petitioner has not articulated actual prejudice to warrant habeas relief with respect to the failure to appoint an independent forensic examination. *Clemmons*, 34 F.3d at 357-58. The court agrees with the trial court's conclusion that Dr. Spitz' affidavit is not sufficient to grant petitioner a new trial. The affidavit is conclusory and does not recite the relevant evidence upon

7

which it is based. The evidence at trial indicates that petitioner suffered multiple injuries to her head and her entire body before her death. The Deputy Chief Medical Examiner for Oakland County, Dr. Kanu Virani, concluded that the victim died from "blunt force head trauma" and did not believe that the victim died immediately because her brain had swollen and that she may have survived 15 minutes to an hour after receiving the injuries. Trial Trans. IV at 11, 16, 26. Dr. Virani found the victim's injuries consistent with having been kicked to death. *Id.* at 26-27. The victim suffered numerous injuries: multiple skull fractures; multiple brain hemorrhages; bleedng in the thyroid cartilage area on both sides of the victim's neck; a two-inch long horizontal laceration above her right eyebrow; a one-inch long laceration on the right side of her forehead perpendicular to the eyebrow laceration; an abrasion scraping the skin on the right side of her forehead and face extending two and one-half inches; an abrasion in the right mandible area; similar scraping on the left side of her face and left ear; bruising under the skin of the lower lip; two black eyes; abrasion of the skin on the back of the left shoulder; a line of "parallel abrasion" on the back of the left lower neck; bruising on the lower back; bruising on the right side of the back; bruising on the right gluteal area; bruising on the right arm, forearm and wrist; and bruising on the left knee. *Id.* at 18-21, 25-26. The autopsy indicated that the victim suffered from bleeding in the entire front area of the head, the right temporal area, the right ear area and the right side of the back of her head. *Id.* at 24. The medical examiner described the bleeding as "continuous all the way from left side of forehead up to the right side of the back of the head." *Id.* at 24-25.

Furthermore, Dr. Spitz's opinion does not establish that someone other than petitioner stomped or kicked the victim to death. At most, the doctor's opinion indicates that all of the victim's injuries resulted from a single "stomp" by an unidentified person. As previously discussed, the state

8

court judge summarily rejected this conclusion, based in part on the trial evidence that the victim received extensive injuries.

### IV.     Conclusion

Upon review of the record, the court concludes that petitioner has failed to establish "good cause" for discovery under Rule 6(a). The specific allegations before the court do not "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09. Accordingly, petitioner's motion for discovery (docket no. 40) is DENIED.

**IT IS SO ORDERED.**

Dated:  May 13, 2005                              /s/ Hugh W. Brenneman, Jr.
                                                            Hugh W. Brenneman, Jr.
                                                            United States Magistrate Judge