**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MELVIN DEJESUS,**

        **Petitioner,**

                                 **Case No. 5:04-CV-56**
**v.**                                **Hon.  Gordon J. Quist**

**KURT JONES,**

        **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.      Background**

Petitioner Melvin DeJesus and his brother and co-defendant, George DeJesus, were each charged with one count of first-degree felony murder, M.C.L. § 750.316(1)(b), one count of first-degree premeditated murder, M.C.L. § 750 .316(1)(a), one count of first-degree criminal sexual conduct, M.C.L. § 750.520(b), and three counts of possession of a firearm during the commission of a felony, M.C.L. § 750.227b, for the death of Margaret Midkiff. After a trial before a single jury, defendants were convicted as charged.  The trial court vacated the first-degree felony murder conviction and one felony-firearm conviction with respect to each defendant. Both petitioner and his brother were sentenced to life in prison without the possibility of parole for the first-degree premeditated murder convictions, life in prison for the first-degree criminal sexual conduct convictions, and two years in prison for each felony-firearm conviction.

Petitioner presented the following issues  in his direct appeal to the Michigan Court of Appeals:

I. [Petitioner's] right to a fair trial under both federal and state constitutions was impermissibly compromised by the introduction of seventeen color photographs of the victim and the crime scene  – many of which were enlarged – whose primary purpose was to horrify the jury and predispose them to convict.

II. A. An evidentiary hearing should be conducted to determine whether the effective assistance of counsel under both federal and state constitutions by trial counsel's failure to adequately investigate and properly raise a viable alibi defense.

  B. An evidentiary hearing should be conducted to determine whether the prosecution violated the dictates of *Brady v. Maryland*, in failing to provide counsel with crucial videotapes and transcripts of interviews conducted with [petitioner] and Crystal Sauro in September 1996.

  C. An evidentiary hearing should be conducted to determine whether the blatant attempts to intimidate Crystal Sauro by Sergeants Sutton and Miller denied [petitioner] his right to due process of law under both federal and state constitutions.

III. Prosecutorial misconduct denied [petitioner] a fair trial under both federal and state constitutions.

IV. The trial court erred in admitting the testimonies of Terrell Gholston and Detective Sergeant Harvey as they related to the admissions of Brandon Gohagen because they did not qualify as prior consistent statements pursuant to MRE 801(d)(1)(b).

V. The trial court erred in denying [petitioner's] motion for a mistrial following the admission of testimony relating to [petitioner's] reputed membership in a gang.

VI. Trial counsel rendered ineffective assistance under both federal and state constitutions by failing to request additional time for preparation.  In addition, counsel rendered ineffective assistance by discarding [petitioner's] claims of alibi, disputing the testimonies of defense witnesses and contradicting co-counsel's theory of defense in closing argument.

VII.    The alleged errors and constitutional deprivations briefed herein individually or in combination cannot be characterized as harmless.

VIII.    [Petitioner's] convictions for first degree premeditated murder and felony murder violate the prohibition against double jeopardy in both federal and state constitutions. This case should be remanded for a correction of the judgment of sentence to reflect the alternate theories of conviction and for the vacating of the criminal sexual conduct and one felony firearm conviction as predicate felonies.

In addition, [petitioner's] presentence report should be corrected to reflect these changes as well as those requested at sentencing.

Petitioner's appellate brief (docket no. 30).

Petitioner also filed a supplemental brief raising the following issue:

IX.    The court should have suppressed the testimony of a key witness who testified in exchange for leniency from the prosecution in violation of M.C.L. § 775.7.

Petitioner's supplemental brief (docket no. 30).

The Michigan Court of Appeals affirmed petitioner's conviction for one count of first-degree murder supported by two theories of premeditated murder and felony murder, as well as one count of felony-firearm. *People v. DeJesus,* No. 209252, slip op. at 2 (Mich. App. June 18, 1999). However, the court vacated petitioner's first-degree criminal sexual conduct conviction and one count of felony firearm, and remanded for modification of his judgment of conviction and sentence. *Id.*

The Michigan Supreme Court denied petitioner's application for leave to appeal "without prejudice to the defendant seeking an evidentiary hearing on ineffective assistance of

3

counsel in a motion for relief from judgment under MCR 6.500." *People v. DeJesus*, No. 115550 (May 31, 2000).[1]

The trial court denied petitioner's application for relief from judgment filed pursuant to MCR 6.500 *et seq. People v. DeJesus*, No. 97-154863-FC (Opinion and Order, Jan. 14, 2002). Petitioner raised the following issues in his delayed application for leave to appeal this order to the Michigan Court of Appeals:

I.      Whether [petitioner] is entitled to DNA testing of potentially exculpatory evidence which may so undermine the state's theory of criminal liability that actual innocence is established and a new trial required?

II.     Whether [petitioner] was denied due process and a fair trial where the trial court denied a request for an independent forensic examination of the autopsy report and a post-conviction independent evaluation of the autopsy report so undermines the report and the testimony of the only witness connecting [petitioner] to the offense that a new trial is required?

III.    Whether the trial court's failure to instruct the jury that in order to convict [petitioner] of premeditated murder under an aiding and abetting theory they had to find that he had the requisite specific intent to commit the offense or gave assistance to a principal with knowledge that the principal had that specific intent, seriously affected the fairness and integrity of the proceeding and has resulted in manifest injustice?

IV.     Whether [petitioner] was deprived of his state and federal constitutional rights to the effective assistance of counsel when counsel failed to investigate and assert a viable defense and [petitioner] is entitled to an evidentiary hearing to establish a testimonial record in support of his assignment of error?

The Michigan Court of Appeals denied the delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D) or MCL 770.16(3)." *People v. DeJesus*, No. 246200 (Mich. App. July 18, 2003).

---

[1]The Rule 5 materials received from the Michigan Supreme Court  do not include a copy of petitioner's application for leave to appeal.  *See* docket no. 31.

4

Petitioner filed an application for leave to appeal, which the Michigan Supreme Court denied because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. DeJesus*, No. 124581 (Mich. Jan. 27, 2004).

Now, petitioner raises the following issues in his petition seeking habeas relief:

I. The erroneous admission of irrelevant and highly pre-judicial testimony alleging petitioner was a member of a gang deprived him of his due process right to a fair trial under the federal constitution.

II. The state trial court erred by allowing inadmissible hearsay evidence in at trial, depriving petitioner of his due process right to a fair trial.

III. The state trial court denied petitioner of his due process rights to a fair trial by permitting the prosecution to present highly inflammatory images to the jury from opening statement and throughout the trial.

IV. The state prosecutor's repeated misconduct was so egregious that it wholly undermined the trial, rendered the verdict unreliable, and deprived petitioner of due process and an impartial trial by jury as guaranteed by the Fifth and Fourteenth Amendments to the federal constitution.

V. Petitioner is entitled to a writ of habeas corpus as he was denied his Sixth Amendment right to the effective assistance of counsel at trial.

VI. The Michigan state courts denied petitioner due process by (a) refusing to provide available DNA biological samples for independent testing and (b) in failing to conduct a hearing with respect to a post-appeal expert forensic scientist's report disputing the state's evidence on the critical element of the murder charge, after refusing to appoint an expert at trial.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state

courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Petitioner has met the exhaustion requirement.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).   An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct.   28 U.S.C. § 2254(e)(1).   A habeas petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.     Procedural default

Respondent contends that petitioner's claims regarding the inflammatory pictures (Issue III), prosecutorial misconduct (Issue IV) and the DNA testing (Issue VI) are procedurally defaulted and not subject to habeas review.  The court typically addresses a petitioner's procedurally defaulted claims first.  Here, however, the court must address a number of preliminary legal questions simply to determine which of petitioner's federal habeas claims are barred by the doctrine of procedural default.  Given these considerations, the court will dispense with a lengthy procedural default analysis and simply review the merits of petitioner's claims.[2]

### IV.     Discussion

#### A.      Testimony regarding petitioner's status as a gang member

First, petitioner contends that prejudicial testimony that he was a gang member violated his due process rights.  Jeremy Wilkes, the victim's son, testified as follows:

Q.     Would you tell the members of the jury how it was that you knew them [i.e., petitioner and co-defendant George DeJesus]?

A.     They were next door neighbors, I grew up with them.

Q.     Did you hang around with them?

---

[2] "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated."  *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997).  *See also, Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1089 (E.D. Mich. 2004) (given complexity of determining procedural default, court addressed claims on the merits).  *Cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

> A.  I didn't hang around with them.  They were in a gang and pretty much getting into trouble, so I pretty much didn't want to associate with them because I knew it would go down the wrong trail, as far as getting into trouble.

Trial Trans. (12/2/97) at 67-68.

Co-defendant George DeJesus' attorney moved for a mistrial on the ground that Wilkes' testimony identifying the DeJesus brothers as "members of a gang." *Id.* at 105.  Counsel referred to a prior ruling which apparently precluded the prosecution "from eliciting any testimony with respect to gangs." *Id.*  Petitioner's counsel joined in the motion. *Id.* at 107.  The prosecutor stated that he cautioned Wilkes about mentioning gangs, that it was not a deliberate elicitation of information, that Wilkes "probably got nervous," and that Wilkes did not belabor the point after the fact came out. *Id.* at 106.  The prosecutor noted that, in contrast, co-defendant's counsel deliberately violated a separte evidentiary ruling which precluded mentioning the victim's alcohol problem, when counsel advised the jury "that the victim was an alcoholic." *Id.*  The judge denied petitioners' motion, stating in pertinent part:

> The Court is inclined to agree with the prosecutor, and of course it was agreed by all parties that no mention of gangs be made, but it's the Court's impression it slipped out inadvertently, and the Court sees no prejudice whatsoever as far as the way it was handled.

*Id.* at 107.

The Michigan Court of Appeals addressed this issue as follows:

> Defendant next argues that the trial court erred in denying his motion for a mistrial on the basis of the admission of Jeremy Wilkes' testimony that defendant was involved in a gang. We disagree. This Court reviews a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *People v. Messenger*, 221 Mich.App 171, 175; 561 NW2d 463 (1997). Wilkes' brief mention of defendant's gang involvement did not rise to the level of "an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v. Lugo*, 214 Mich.App 699, 704; 542 NW2d 921 (1995). Thus, the trial court did not

abuse its discretion in denying defendant's motion for a mistrial. Similarly, we reject defendant's argument that the prosecutor committed misconduct by eliciting the challenged testimony from Wilkes where Wilkes' answer was nonresponsive and the brief reference to the gang involvement did not deny defendant a fair trial.

*People v. Melvin DeJesus*, No.  209252, slip. op. at 6.

Petitioner contends that this single reference to gang membership was sufficiently prejudicial to justify the reversal of his conviction. Petitioner, however, states no authority for the proposition that unsolicited testimony identifying a criminal defendant as a gang member is a constitutional violation requiring reversal of the conviction.

Courts generally view the introduction of gang membership as an issue of relevance under the applicable rule of evidence. *See, e.g., United States v. Abel*, 469 U.S. 45 (1984) (analyzing issue of gang membership under Fed. R. Evid. 403 and 608(b)); *United States v. Gibbs*, 182 F.3d 408, 429-430 (6th Cir. 1999) (characterizing issue of gang membership as a matter of judicial discretion, i.e., the evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice); *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996) (finding government's gang evidence to be unduly prejudicial under Fed. R. Evid. 403); *United States v. Hendrix*, No. 94-1404, 1995 WL 218472 (6th Cir. April 12, 1995) (photo of defendant and three other subjects along with a large amount of cash, coupled with police officer's testimony that one of the subjects in the photo is making a a gang signal, was  irrelevant and unduly prejudicial under Fed. R. Evid. 403, because it implied that the defendant was engaged in gang activity).

The Supreme Court has found that a criminal defendant's First Amendment rights were violated at a death penalty hearing, when evidence of membership in a specific gang and that gang's beliefs were irrelevant to the crime at issue.  *See Dawson v. Delaware*, 503 U.S. 159, 167 (1992) (stipulation that  defendant was member of a prison chapter of the Aryan Brotherhood, a

white racist prison gang, at the sentencing phase of a capital murder prosecution was constitutional error where his membership was not relevant to any of the issues being decided in the proceeding). However, *Dawson* is distinguishable from the present case both procedurally (petitioner's case does not arise from the sentencing phase of a capital murder prosecution) and factually (petitioner's case does not involve a stipulation naming a specific gang). Accordingly, the court rejects petitioner's claim that Wilkes' testimony presents a federal constitutional claim.

Petitioner's claim, which arises from an alleged error of state law, is not subject to federal habeas relief. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). In determining whether a trial error violated the constitution, the court must "evaluate whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Clemmons*, 34 F.3d at 357 *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Thus, habeas petitioners "are not entitled to

habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637.

As an initial matter, the Michigan Court of Appeals determined that the trial court's denial of the motion for a mistrial was not an abuse of discretion. Because the state courts are the ultimate expositors of state law in federal habeas proceedings, *Mullaney*, 421 U.S. at 691, it is not the province of the federal court to reexamine the Michigan state courts' decision on this matter, *see Estelle*, 502 U.S. at 67-68.

Furthermore, even if the appellate court had found that an error of state law, petitioner is not entitled to habeas relief. After reviewing the record, the court agrees with the Michigan Court of Appeals that Jeremy Wilkes' brief reference to petitioner as a member of an unnamed gang did not result in actual prejudice to petitioner. Accordingly, petitioner is not entitled to habeas relief on this claim.

### B.      Hearsay evidence

Next, petitioner contends that the admission of hearsay evidence of two witnesses deprived him of his due process right to a fair trial. Specifically, petitioner contests the admission of testimony from witnesses Terrell Gholston and Detective Sergeant Harvey regarding Brandon Gohagen's statements given to them about the murder.

Brandon Gohagen testified as part of a plea agreement in this matter, under which he pled guilty to second degree murder and first degree CSC. Trial Trans. IV at 48-50. Gohagen testified that he was with the DeJesus brothers on the evening of July 8, 1995. *Id.* at 43-44. Gohagen and petitioner entered the victim's house that evening, armed with pistols. *Id.* at 53-54. Petitioner walked to the victim's bedroom, grabbed her by the hair, told her to "wake up bitch," and

told her "to be quiet or he would shoot her." *Id.* at 55-56.  When she got out of bed, petitioner told her to take her clothes off, and then told Gohagen to have sex with her.  *Id.* at 61-62.  Petitioner told the victim to perform oral sex on Gohagen.  *Id.* 62-64.  Gohagen had vaginal and possibly anal sex with the victim.  *Id.* at 64-65.  The victim told Gohagen not listen to petitioner, but did not fight with Gohagen.  *Id.* at 65-66.

After Gohagen raped the victim, petitioner and Goerge DeJesus tied her hands and feet.  *Id.* at 66-67.  After she was bound up, George DeJesus picked her up and carried her out of the bedroom to the basement.  *Id.* at 68-69.  Petitioner followed his brother to the basement.  *Id.* at 69.  After a couple of minutes, Gohagen went to the basement, where he saw the DeJesus brothers standing in front of the victim.  *Id.* at 70.  The victim was on her knees, saying that "if we just leave, that she wouldn't tell anybody."  *Id.* at 71-72.  Petitioner pushed her over and said "I know you won't tell anybody, bitch."  *Id.* at 72.  After she fell over, petitioner kicked her three or four times in the upper body,  using "short, real fast kicks, stomping."  *Id.* at 72-73.  After petitioner started to kick the victim, his brother George "joined in and threw a couple of kicks" at the victim's upper body.  *Id.* at 73-74. After he saw George DeJesus kick the victim, Gohagen ran up the stairs out of the house.  *Id.* at 74.  The victim was moaning at that time.  *Id.* at 82.

Gohagen heard that a warrant had been issued for his arrest and left for Florida with Terrell Gholston.  *Id.* at 79.  After Gohagen was arrested in Florida, he told Detective Sergeant Harvey that he had raped the victim and about the DeJesus brothers' actions.  *Id.* at 79-80.  Gohagen gave his statement to the detective long before he entered into the plea agreement.  *Id.* at 81.  He also told witness Terrell Gholston about the crime.  *Id.* at 81.

Detective Harvey gave the following testimony.  A warrant was issued for Gohagen after a DNA test on suspected sperm came back with a positive match on him.  Trial Trans. V at 160-61.  Gohagen waived his right to remain silent and gave a statement.  *Id.* at 162-63.  Detective Harvey testified that Gohagen's statement made in September 1996 did not deviate from his testimony given at trial, and recounted those facts.  *Id.* at 164, 171-77.  The detective recalled that the government entered into a proffer agreement for Gohagen's testimony approximately one week before the September 4, 1997 preliminary examination.  *Id.* at 178-80.

Terrell Gholston gave the following testimony.  Gholston and Gohagen left for Florida on or about September 13, 1996.  Trial Trans. V at 71.  At the time, Gholston did not know that Gohagen had an outstanding arrest warrant.  *Id.*  After Gohagen's arrest and return to Michigan, Gholston spoke to him in the Oakland County jail.  *Id.* at 72.  This conversation occurred on September 27, 1996.  *Id.* at 84.  At that time, Gohagen told him "the entire story" of the victim's rape and murder.  *Id.* at 73.

Petitioner's counsel objected to the testimony as hearsay.  *Id.*  The prosecutor responded as follows:

> Your Honor, pursuant to Michigan Rules of Evidence, 801(d)(1)(b), this is a prior consistent statement to rebut a charge of recent fabrication.  And in this case, both counsel in their opening statements made representations that the only reason Mr. Gohagen had said what he was saying, was because he had been offered a deal.  This is a prior consistent statement at a long time prior to any deal offered to Mr. Gohagen  Technically, under the Hearsay Rule, that is not hearsay, if offered for those purposes.  They raised the inference, I didn't.

*Id.* at 73-74.  The court overruled petitioner's objection.  *Id.* at 74.

Gholston then recounted events as told to him by Gohagen: that petitioner made the victim take her clothes off; that petitioner told the victim to give Gohagen oral sex; that Gohagen

13

had intercourse with the victim; that George DeJesus tied up the victim and took her to the basement; that petitioner "kicked her so much and stomped on her head that it sounded like her head just turned to mush;" and that George DeJesus also kicked the victim. *Id.* at 74-82.

The Michigan Court of Appeals addressed this issue as follows:

Defendant next argues that the trial court erred in admitting the testimony of Terrell Gholston and Detective Sergeant Harvey regarding Gohagen's admissions because they did not qualify as prior consistent statements under MRE 801(d)(1)(B). We disagree. This Court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v. Howard*, 226 Mich.App 528, 551; 575 NW2d 16 (1997).

A statement is not hearsay if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." To qualify for admission under MRE 801(d)(1)(B), the statement must have been made before the motive to fabricate arose. *Tome v. United States*, 513 U.S. 150; 115 S Ct 696; 130 L.Ed.2d 574 (1995); *People v. Rodriquez (On Remand)*, 216 Mich.App 329, 331; 549 NW2d 359 (1996). Throughout the trial, defense counsel repeatedly raised the possibility that Gohagen's testimony was influenced by the plea agreement. Gohagen's prior consistent statements to Gholston and Harvey, which were made before the plea agreement was offered to Gohagen, rebutted defense counsel's charge that Gohagen's testimony was influenced by the plea agreement. Thus, Gohagen's prior consistent statements were properly admitted pursuant to MRE 801(d)(1)(B). Accordingly, we also reject defendant's argument that the prosecutor committed misconduct by eliciting the testimony regarding the prior consistent statements.

*People v. Melvin DeJesus*, No. 209252, slip. op. at 5-6.

Petitioner apparently contends that Gohagen had a motive to fabricate his testimony to obtain a plea offer and that he was denied a fair trial when Gholston and Detective Sergeant Harvey buttressed Gohagen's testimony. Petitioner characterizes Gohagen's statements as devastating hearsay evidence, and argues that the Michigan courts made an unreasonable application of clearly established federal law. Petition at 45. Petitioner relies on *Tome v. United States*, 513 U.S. 150 (1995), which discussed the federal version of the hearsay rule, Fed. R. Evid. 801(d)(1)(B).

14

In *Tome*, the court held that Fed. R. Evid. 801(d)(1)(B) permitted the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper motive, but only when those statements were made prior to the charged fabrication or motive. *Tome*, 513 U.S. 150. Contrary to petitioner's assertions, *Tome* involved the construction of a federal rule of evidence, not a federal constitutional mandate regarding the admission of hearsay testimony.

Petitioner's issue involves a question of state evidentiary law. The Michigan Court of Appeals determined that the witness' statements were properly admitted under MRE 801(d)(1)(B), because Gohagen made the statements in September 1996, approximately one year before he received the proffer agreement. This court will not reexamine the state court's decision regarding the admission of those statements under state law. *Estelle*, 502 U.S. at 67-68; *Mullaney*, 421 U.S. at 691.[3]

Furthermore, even if the trial court had erred in admitting this testimony under MRE 801(d)(1)(B), petitioner was not denied a fair trial. The jury had the opportunity to evaluate the credibility of Gohagen, Gholston and Detective Harvey, all of whom testified at trial and were subject to cross-examination. The jury was well aware of the existence of Gohagen's plea agreement and his possible motive to accuse petitioner of the murder.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence

---

[3] Even if *Tome* applied, the hearsay statements would be admissible, because they predated Gohagen's agreement to testify on behalf of the government.

presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### C.      Inflammatory photographs

### 1.      Gruesome photographs

First, petitioner contends that his due process rights were violated by the admission of gruesome photographs of the victim and the crime scene.  Petitioner's claim regarding the admission of these photographs is not cognizable on habeas review.  *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002), *citing Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (holding that erroneous admission of gruesome photo of decedent did not raise "the spectre of fundamental fairness such as to violate federal due process of law").

### 2.      Photograph of George DeJesus

Second, petitioner contends that his due process rights were violated by the admission of a photograph of co-defendant George DeJesus holding two handguns.  The Michigan Court of Appeals addressed this issue as follows:

> Defendant next challenges the admission of a photograph of codefendant George DeJesus looking straight into the camera and holding a handgun in each hand at arms length, pointed at the camera, on the basis that its probative value was substantially outweighed by its prejudicial effect. The prosecutor introduced the photograph during Brandon Gohagen's testimony, and Gohagen identified one of the guns George was holding in the photograph as the gun that Melvin had at Midkiff's house. The photograph had little relevance to Melvin's case because Gohagen testified that he never saw Melvin's gun while they were in Midkiff's house. Nevertheless, in light of the fact that the photograph was not of Melvin, any error in admitting the photograph of George was harmless with respect to Melvin.

*People v. DeJesus*, No. 209252, slip op. at 3.

Petitioner contends that this photograph of George DeJesus "holding guns pointed upward and glaring at the camera" was unduly prejudicial.  Petitioner relies on *Old Chief v. United*

16

*States*, 519 U.S. 172 (1997), which construed "unfair prejudice" in the context of the admission of relevant evidence under Fed. R. Evid. 403:

> The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.

*Old Chief*, 519 U.S. at 180.  The court rejects this contention.  The photograph was entered into evidence to identify the handguns that petitioner and his brother had in their possession when they murdered the victim. Trial Trans. IV at 57-59.  The photograph did not depict petitioner, much less petitioner "glaring" at the camera.

Notwithstanding the correctness of the state appellate court's determination that this photograph of a co-defendant holding two handguns had little relevance to petitioner's case,[4] the Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

---

[4] The court notes that petitioner's co-defendant George DeJesus raised a similar claim regarding the prejudicial nature of the photograph in his suit for federal habeas relief, *DeJesus v. Lafler*, No. 04-cv-71553-DT (E. D. Mich.).  The court rejected George DeJesus' claim that he was entitled to habeas relief due to the admission into evidence of this photograph.  After observing that the photograph was not related to the crime scene, the court held that "[i]n light of the other evidence against Petitioner, including testimony that Petitioner held Gohagen's gun during the sexual assault, bound the victim's hands and feet, and participated in kicking her, the photograph was harmless beyond a reasonable doubt."  *DeJesus v. Lafler*, No. 04-cv-71553-DT (Opinion) (Dec. 20, 2006), slip op. at 10.

### D.        Prosecutorial misconduct

Next, petitioner contends that the prosecutor engaged in egregious misconduct which denied him of due process and an impartial trial by jury. First, petitioner contends that the prosecutor appealed to the "passions & sympathy of the jury" in the closing argument, stating that the victim was conscious when being kicked to death and a "pretty" woman who was admirably getting her life under control from her "personal demons." Trial Trans. (12/11/97) at 3-4. Second, the prosecutor appealed to the "fears and prejudices of the jury." In the opening statement, the prosecutor referred to the evidence as something that would "horrify" the jury, referred to petitioner and his brother as "brutal and savage murderers," and told the jury that after the trial they "will have looked square into the face of evil, not once, but twice."  Trial Trans. II at 17, 29.  In closing arguments, the prosecutor referred to petitioner and his brother as "pure evil" and "sadistic executioners." Trial Trans. (12/11/97) at 4, 6.  Third, the prosecutor appealed to the jury's civic duty to convict petitioner and his brother of murder and rape.  *Id.* at 6-7.  For example, the prosecutor stated:

> And even those words, ladies and gentlemen of the jury, don't do this horror justice.  And even you, the jury, will never be able to do justice in this matter.  How could there be enough justice for the ruthless slaughter of an innocent woman?
>
> How could there be enough justice for the act of savagery that we know took place . . . .
>
> There never could be enough justice for a woman maimed, mutilated, broken and bloody in a heap on the floor

*Id.* at 6-7.

The Michigan Court of Appeals addressed the relevant portions of petitioner's claims as follows:

> Next, defendant asserts that he was denied a fair trial by prosecutorial misconduct. We disagree. The test for prosecutorial misconduct is whether the

prosecutor's conduct denied the defendant a fair and impartial trial. *People v. Paquette*, 214 Mich.App 336, 342; 543 NW2d 342 (1995). The reviewing court must examine the pertinent portions of the record and evaluate the prosecutor's remarks in context. *Id.* Appellate review of allegations of error to which defendant did not object at trial is foreclosed unless an objection could not have cured the error or a failure to review the issue would result in a miscarriage of justice. *People v. Stanaway*, 446 Mich. 643, 687; 521 NW2d 557 (1994).

Defendant first argues that the prosecutor committed misconduct when, during her opening statements, she referred to defendants as "two brutal and savage murderers," told the jurors they would be terrified and haunted by the facts of the case, and told the jurors that when they have left the courtroom they "will have looked square into the face of evil, not once, but twice." Defendant failed to object to the statements at trial. We find no error in the prosecutor's statements. A prosecutor is free to argue the evidence and all reasonable inferences arising from the evidence as they relate to the prosecution's theory of the case. *People v. Bahoda*, 448 Mich. 261, 282; 531 NW2d 659 (1995). Here, the prosecutor's description of the crime was supported by the evidence she later presented. Furthermore, any prejudice could have been cured by an appropriate instruction had defendant objected to the statements at trial and failure to further review this issue will not result in a miscarriage of justice. *Stanaway*, *supra* at 687.

\* \* \*

Next, defendant contends that the prosecutor made several improper remarks during her closing arguments that were inflammatory, "equated justice with conviction," and improperly commented on defendant's decision not to testify at trial. We have reviewed the remarks in context and conclude that any prejudice resulting from the remarks could have been cured by an appropriate instruction had defendant objected at trial, and that failure to further review the issue will not result in a miscarriage of justice. *Stanaway, supra* at 687. Furthermore, the prosecutor's statement that certain evidence was uncontested was not improper. While it is improper for a prosecutor to comment on a defendant's failure to testify, the prosecutor may properly argue that certain evidence is uncontroverted. *People v. Perry*, 218 Mich.App 520, 538; 554 NW2d 362 (1996). Thus, we conclude that defendant is not entitled to reversal on the basis of prosecutorial misconduct.

*People v. DeJesus*, No. 209252, slip op. at 4-5.

Prosecutorial misconduct cannot serve as the basis of habeas corpus relief unless it

is so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S.

637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "When a petitioner makes

a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). The appropriate standard of review for a prosecutorial misconduct claim on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* The court should consider four factors in determining whether a prosecutorial remark rises to the level of a due process violation: "(1) whether the remark tended to mislead the jury or to prejudice the accused; (2) whether the remark was isolated or extensive; (3) whether the remark was accidentally or deliberately placed before the jury; and (4) the strength of the evidence against the accused." *Hutchison*, 303 F.3d at 750.

Petitioner's argument does not address the four factors outlined in *Hutchinson*. After reviewing these factors, the court concludes that the prosecutor's remarks did not deny petitioner due process. With respect to the first factor, the court finds that the remarks did not tend to mislead the jury or prejudice the accused. The jury was specifically instructed that the attorneys' statements and arguments were not evidence. Trial Trans. (12/11/97) at 75. *See generally, United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002) ("[j]uries are presumed to follow the instructions they are given"). In addition, for the reasons discussed below, the prosecutor's remarks in this case did not not prejudice petitioner.

With respect to the second and third factors, the prosecutor deliberately and on more than one occasion referred to the "savage" or "evil" nature of petitioner and appealed for justice for

the victim.  However, these statements were not so prejudicial as to deny petitioner due process.  "Although [the Sixth Circuit] has held that it is a constitutional violation to call upon the jury to solve a social problem, such as the drug trade, by convicting the defendant, it is not improper for the prosecutor to make a mere allusion to the general need to convict guilty people."  *Hutchison*, 303 F.3d at 751 (internal quotation marks omitted).  Thus, it is not a constitutional violation for a prosecutor either to ask the jury to make a particular defendant answer for his crimes, or to characterize a defendant's actions as "evil."  *Id.*  Here, the prosecutor did not ask the jury to convict petitioner in order to solve a social problem or to send a message to other "evil" people in the community.  Rather, the prosecutor's remarks pointed out the heinous nature of the crime and asked the jury to hold petitioner responsible for his actions.  Finally, with respect to the fourth factor, substantial evidence supported petitioner's conviction. *See, e.g.*, discussion in § IV.B., *supra*.  This was not a close case in which the jury would be tempted to convict petitioner erroneously based on the prosecutor's remarks rather than the evidence.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### E.        Ineffective assistance of counsel

Next, petitioner contends that his trial counsel was ineffective.  Specifically, petitioner contends that (1) counsel did not request additional time to prepare a defense in the case; (2) counsel attempted to impeach some of his own witnesses; and (3) counsel contradicted co-

defendant's counsel and petitioner's statements regarding a potential alibi defense. Petitioner's Brief

at 65-66. The Michigan Court of Appeals addressed this issue as follows:

> Defendant next argues that he was denied the effective assistance of counsel. We disagree. To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the representation prejudiced the defendant to the extent that it denied him a fair trial. *People v. Pickens*, 446 Mich. 298, 303; 521 NW2d 797 (1994). To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Stanaway*, *supra* at 687-688. The defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 687. Because defendant did not move for a *Ginther* hearing in the trial court, this Court's review is limited to mistakes apparent on the record.

> Defendant first argues that he was denied the effective assistance of counsel because defense counsel failed to join in a motion to adjourn trial brought by counsel for codefendant George DeJesus to request extra time to prepare for trial. Defendant further asserts that defense counsel appeared confused regarding the dates of certain police interviews of witnesses. Essentially, defendant argues that defense counsel failed to adequately prepare for trial. However, defendant fails to explain how his defense was prejudiced by the alleged errors of defense counsel. Thus, because defendant has not shown prejudice resulting from the alleged lack of preparation, he has failed to demonstrate that he was denied the effective assistance of counsel. *People v. Caballero*, 184 Mich.App 636, 640; 459 NW2d 80 (1990).

> Defendant next argues that he was denied the effective assistance of counsel because defense counsel attempted to impeach defense witness Christina Ortega's testimony that the party on Robinwood Street was held on Saturday night, rather than Friday night. However, this Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v. Barnett*, 163 Mich.App 331, 338; 414 NW2d 378 (1987). Furthermore, defendant has not explained how he was prejudiced by the questioning, and it is unlikely that the result of the proceedings would have been different had the questioning not occurred. Thus, defendant has not shown that he was denied the effective assistance of counsel.

> Next, defendant argues that he was denied the effective assistance of counsel because defense counsel erred in calling Denise Model and Jennifer Jones as witnesses. Decisions regarding which witnesses to call are presumed to be matters of trial strategy. *People v. Julian*, 171 Mich.App 153, 158-159; 429 NW2d 615 (1988). The fact that a trial strategy does not work does not render its use ineffective assistance of counsel. *People v. Stewart (On Remand)*, 219 Mich.App 38, 42; 555

NW2d 715 (1996). We have reviewed the relevant portions of the record, and conclude that defense counsel's decision to call the witnesses did not constitute ineffective assistance of counsel.

Finally, defendant argues that he was denied the effective assistance of counsel because defense counsel contradicted defendant's police statements and alibi defense and the arguments of counsel for codefendant George DeJesus. Defendant further asserts that defense counsel misstated evidence when, during closing arguments, he stated that defendant did not have an alibi and was not sure where he was on the night of the murder, and acknowledged the uncertainty of the testimony regarding the night of the party. However, contrary to defendant's argument, defense counsel did not compromise a potential alibi defense by acknowledging that there was no clear testimony that the party occurred on the night of the murder. It is clear from the record that there was much confusion regarding the date of the party and that the credibility of testimony that the party was held on Saturday night was questionable. Defense counsel's decision to acknowledge the inconsistencies was trial strategy. Defendant has not demonstrated that he was denied the effective assistance of counsel.

*People v. Melvin DeJesus*, No. 209252, slip op. at 6-7 (footnote omitted).

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690.  "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly

23

deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.   *Strickland*, 466 U.S. at 689-690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense."  *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, *5 (6th Cir. 1998).  Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances."  *United States v. Boone*,  437 F.3d 829, 839 (8th Cir.) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, 127 S. Ct. 172 (2006).

The Michigan Court of Appeals properly applied the *Strickland* test,  as adopted by the Michigan courts in  *Pickens*, 446 Mich. 298.  The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### E.    Due process violation regarding DNA testing

Finally, petitioner contends that the state courts denied him due process by (a) refusing to provide available DNA biological samples for independent testing and (b) in failing to conduct a hearing with respect to a post-appeal expert forensic scientist's report disputing the state's evidence on the critical element of the murder charge, after refusing to appoint an expert at trial. This court previously addressed the viability of petitioner's DNA evidence claim, when it denied

his motion for discovery.  *See* docket no. 48 (Order denying petitioner's motion for discovery) (May 13, 2005).

In denying petitioner's motion, the undersigned rejected the merits of petitioner's claim set forth in Issue VI:

Before addressing the question of whether a moving party is entitled to discovery under Rule 6(a) to support a habeas claim, the court should first determine the "essential elements" of the relevant habeas claim.  *See Bracy*, 520 U.S. at 903-04.  Having determined the "essential elements" of the relevant claim, the court can then determine whether the moving party has shown "good cause" for discovery under Rule 6(a).  "Good cause" is shown by the following test: "whether specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."  *Id.* at 908-09, *quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969).

\*       \*       \*

**[DNA testing]**

In support of his habeas claim VI, petitioner states that this habeas proceeding is "his last meaningful opportunity to appeal to any judicial authority" and that this court should provide him "with a forum to present the legal bases of his claims, but also to develop factual bases to support his claim of innocence," and "[a]t the very least, the Due Process Clause of the Fourteenth Amendment guarantees a meaningful opportunity to be heard in a meaningful way."  Brief in support of Petition at 71.  Petitioner further stated:

Based on the trial record a request to obtain the biological samples for DNA testing was made by Petitioner pursuant to a post-conviction Michigan statute (M.C.L. 770.16) providing for such a request.  In making his state court argument, Petitioner asserted and requested a hearing to establish actual innocence, citing federal case law for the proposition that the Eight and Fourteenth Amendments protects [sic] against incarcerating innocence [sic] defendants.  The state courts failed to address the federal aspects of the actual innocence claim and held that Petitioner failed to meet the standards of the state statute in denying the request.

25

*Id.* at 74.

First, petitioner's claim of actual innocence, in and of itself, does not provide a constitutional basis for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 393, 400 (1993). "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400. Accordingly, the court concludes that petitioner's "actual innocence" claim does not provide a basis for federal habeas relief.

Second, state evidentiary rulings are not subject to habeas review. Federal habeas corpus review is limited to questions regarding whether the conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). An issue concerning the admissibility of evidence under state law does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that petitioner was denied a fundamentally fair trial. *Clemmons v. Sowders,* 34 F.3d 352, 357-58 (6th Cir. 1994) To determine whether the petitioner was denied a fundamental due process right, the court should consider the extent to which the evidence is critical to the case. *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994). Thus, petitioner must establish "actual prejudice" to warrant habeas relief. *Clemmons*, 34 F.3d at 357-58.

Petitioner seeks discovery to support his habeas claim VI. By way of background, the trial court addressed both of these issues on the motion for relief from judgment. The DNA test was requested pursuant to a Michigan statute, MCL 770.16, which allows a convicted defendant to seek such testing by filing a petition with the trial court. *See* MCL 770.16(1). A Michigan Circuit Court may order DNA testing pursuant to MCL 770.16(3), if the defendant:

(a) Presents prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime that resulted in conviction.

(b) Establishes all of the following by clear and convincing evidence:

(i) A sample of identified biological material described in subsection (1) is available for DNA testing.

(ii) The identified biological material described in subsection (1) was not previously subjected to DNA testing or, if previously tested, will be subject to DNA

testing technology that was not available when the
defendant was convicted.

(iii) The identity of the defendant as the perpetrator of
the crime was at issue during his or her trial.

The state trial court reviewed petitioner's request as one to test blood under
the victim's fingernail to establish that the victim (Margaret Midkiff) may have
struggled with the perpetrator that caused her death. *See* Opinion and Order (Oakland
Cir. Ct. Jan. 14, 2002) (docket no. 32). The trial court determined that such testing
would not exonerate petitioner: "Whether the blood source could be identified as
Brandon Gohagen [the rapist] to substantiate a scratch by [the victim], such results
would not undermine the State's theory of criminal liability or exonerate
[petitioner]." *Id.* at 8. The court also stated:

> The Court recognizes that the jury was aware that Gohagen's
> truthfulness was in question as related to the scratch and to possible
> force used during the rape. Yet, the jury convicted [petitioner] of
> first-degree murder based upon Gohagen's testimony, the testimony
> of others, and the evidence presented. A trial judge is not allowed to
> act as a thirteenth juror and grant a new trial on the basis of a
> disagreement with the jurors' assessment of credibility. . . Further,
> the Court is aware that testimony implicated co-defendant George
> DeJesus [petitioner's brother], as also having facial scratches after the
> murder of Margaret Midkiff. In its analysis under MCL 770.16(3)(a),
> the Court finds that [petitioner] has not met his burden of proving that
> the blood under the fingernail clippings is material to identify
> Brandon Gohagen as the murderer of Margaret Midkiff.

*Id.* at 9. Finally, the court noted that four years had elapsed since trial, that it was not
convinced that the fingernail clippings were still available for DNA testing, and that
petitioner failed to provide "any clear explanation to substantiate the claim that
technology is now available to subject this slight amount of blood, found under the
fingernail clippings, to DNA testing." *Id.* The trial court found that while petitioner
met his burden of proof as to MCL 770.16(3)(b)(ii) and (iii), he failed to meet his
burden under MCL 770.16(3)(b)(i). *Id.*

Based on this record, petitioner has failed to establish actual prejudice to
warrant habeas relief. *Clemmons*, 34 F.3d at 357-58. Even if DNA testing identified
the blood and skin remnants as belonging to Gohagen, this would, at most, affect the
credibility of Gohagen's statement that the victim did not resist his sexual assault.
The existence of the DNA would not identify Gohagen as the individual responsible
for kicking the victim to death or demonstrate that he is entitled to habeas relief. *See*

*Harris*, 394 U.S. at 300.  Accordingly, petitioner is not entitled to discovery with respect to the DNA testing.

**[Court's failure to grant independent forensic examination]**

On the motion for relief from judgment, the state trial court also rejected petitioner's second claim that he was deprived of due process and his right to a fair trial when the trial court failed to grant him a request for an independent forensic examination of the victim.  Opinion and Order (Jan. 14, 2002) at 5.  The court noted that co-defendant Gohagen filed a pre-trial motion for an independent forensic examination of the decedent, while petitioner did not file a motion but objected in the midst of trial.  *Id.*  The court also observed that petitioner provided no explanation as to why he did not raise the issue during his appeal as of right and why he waited three years after his conviction. *Id.*   The court also noted that the affidavit, executed by Dr. Spitz on November 29, 2000, indicates that he reviewed "relevant evidence" in this case to form the opinion "that a single stomp to the head was the cause of death of [the victim]." *Id.* at 6.  "[Petitioner's] premise for having an independent forensic examination is to contradict [the rapist's] testimony that [petitioner] caused [the victim's death by repeated kicking." *Id.*  In rejecting this claim, the court observed that: newly discovered evidence relating only to a witness' credibility was not sufficient to require a new trial under Michigan law; that Dr. Spitz's affidavit did not identify the "relevant evidence" he used to formulate his opinion of the three-year old murder; and recalled its own observation that "evidence presented during the trial indicates that [the victim's] injuries extended beyond a single stomp to the head," including multiple subdural hemorrhages within the brain, skull fractures and bruising to the upper body.  *Id.* at 6-7.  The trial court denied petitioner's motion under MCR 6.508(D)(3)(b)(i) and (iii), on the ground that  there was no actual prejudice  because the court's denial of the co-defendant's motion for an independent forensic examination "did not result in [petitioner's] likely acquittal or create an irregularity, which was so offensive to the maintenance of a sound judicial process." *Id.* at 7.

Petitioner has not articulated actual prejudice to warrant habeas relief with respect to the failure to appoint an independent forensic examination. *Clemmons*, 34 F.3d at 357-58.  The court agrees with the trial court's conclusion that Dr. Spitz' affidavit is not sufficient to grant petitioner a new trial.  The affidavit is conclusory and does not recite the relevant evidence upon which it is based.  The evidence at trial indicates that petitioner suffered multiple injuries to her head and her entire body before her death. The Deputy Chief Medical Examiner for Oakland County, Dr. Kanu Virani, concluded that the victim died from "blunt force head trauma" and did not believe that the victim died immediately because her brain had swollen and that she may have survived 15 minutes to an hour after receiving the injuries.  Trial Trans. IV at 11, 16, 26.  Dr. Virani found the victim's injuries consistent with having been kicked to death.  *Id.* at 26-27.  The victim suffered numerous injuries: multiple

skull fractures; multiple brain hemorrhages; bleeding in the thyroid cartilage area on both sides of the victim's neck; a two-inch long horizontal laceration above her right eyebrow; a one-inch long laceration on the right side of her forehead perpendicular to the eyebrow laceration; an abrasion scraping the skin on the right side of her forehead and face extending two and one-half inches; an abrasion in the right mandible area; similar scraping on the left side of her face and left ear; bruising under the skin of the lower lip; two black eyes; abrasion of the skin on the back of the left shoulder; a line of "parallel abrasion" on the back of the left lower neck; bruising on the lower back; bruising on the right side of the back; bruising on the right gluteal area; bruising on the right arm, forearm and wrist; and bruising on the left knee. *Id.* at 18-21, 25-26. The autopsy indicated that the victim suffered from bleeding in the entire front area of the head, the right temporal area, the right ear area and the right side of the back of her head. *Id.* at 24. The medical examiner described the bleeding as "continuous all the way from left side of forehead up to the right side of the back of the head." *Id.* at 24-25.

Furthermore, Dr. Spitz's opinion does not establish that someone other than petitioner stomped or kicked the victim to death. At most, the doctor's opinion indicates that all of the victim's injuries resulted from a single "stomp" by an unidentified person. As previously discussed, the state court judge summarily rejected this conclusion, based in part on the trial evidence that the victim received extensive injuries.

*        *        *

Upon review of the record, the court concludes that petitioner has failed to establish "good cause" for discovery under Rule 6(a). The specific allegations before the court do not "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09. Accordingly, petitioner's motion for discovery (docket no. 40) is DENIED.

Order (May 13, 2005) at 1-9 (footnotes omitted).

For the reasons as set forth in the May 13, 2005 order, the court concludes that the

state did not deprive petitioner of his due process rights by either refusing to provide available DNA

biological samples for independent testing or in failing to conduct a hearing with respect to a post-appeal expert forensic scientist's report.[5]

### V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  June 11, 2007                                   /s/ Hugh W. Brenneman, Jr.
                                                        Hugh W. Brenneman, Jr.
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[5] The court's May 13, 2005 order relied on the Supreme Court's opinion in *Herrera* to support its conclusion that a claim of actual innocence based upon new evidence, in and of itself, does not provide a constitutional basis for federal habeas relief.  During the pendency of this matter, the Supreme Court had an opportunity to re-visit whether a free-standing claim of actual innocence can form the basis for federal habeas relief. *See House v. Bell*, -- U.S. --, 126 S. Ct. 2064 (2006).  However, the Supreme Court declined to resolve the issue. *Id.*, 126 S.Ct. at 2086-87.  Accordingly, this court's May 13, 2005 is consistent with both *Herrera* and *House*.